## DEPARTMENT OF HEALTH AND HUMAN SERVICES

**Centers for Medicare & Medicaid Services**

**42 CFR Parts 417 and 422**

**[CMS–4069–P]**

**RIN 0938–AN06**

**Medicare Program; Establishment of the Medicare Advantage Program**

**AGENCY:** Centers for Medicare & Medicaid Services (CMS), HHS.

**ACTION:** Proposed rule.

**SUMMARY:** This proposed rule would implement provisions of the Social Security Act (the Act) establishing and regulating the Medicare Advantage (MA) program. The MA program was enacted in Title II of The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA) (Pub. L. 108–173) on December 8, 2003. The MA program replaces the Medicare+Choice (M+C) program established under Part C of title XVIII of the Act, while retaining most key features of the M+C program.

The MA program attempts to broadly reform and expand the availability of private health plan options to Medicare beneficiaries. See the "Executive Summary" in the **SUPPLEMENTARY INFORMATION** section for an outline of the key features of the MA program.

**DATES:** To be assured consideration, comments must be received at one of the addresses provided below, no later than 5 p.m. on October 4, 2004.

**ADDRESSES:** In commenting, please refer to file code CMS–4069–P. Because of staff and resource limitations, we cannot accept comments by facsimile (FAX) transmission.

You may submit comments in one of three ways (no duplicates, please):

1. *Electronically.* You may submit electronic comments on issues in this document to *http://www.cms.hhs.gov/regulations/ecomments* (attachments should be in Microsoft Word, WordPerfect, or Excel; however, we prefer Microsoft Word).

2. *By mail.* You may mail written comments (one original and two copies) to the following address ONLY: Centers for Medicare & Medicaid Services, Department of Health and Human Services, Attention: CMS–4069–P, P.O. Box 8018, Baltimore, MD 21244–8018.

Please allow sufficient time for mailed comments to be received before the close of the comment period.

3. *By hand or courier.* If you prefer, you may deliver (by hand or courier) your written comments (one original and two copies) before the close of the comment period to one of the following addresses. If you intend to deliver your comments to the Baltimore address, please call (410) 786–7195 in advance to schedule your arrival with one of our staff members. Room 445–G, Hubert H. Humphrey Building, 200 Independence Avenue, SW., Washington, DC 20201; or 7500 Security Boulevard, Baltimore, MD 21244–1850.

(Because access to the interior of the HHH Building is not readily available to persons without Federal Government identification, commenters are encouraged to leave their comments in the CMS drop slots located in the main lobby of the building. A stamp-in clock is available for persons wishing to retain a proof of filing by stamping in and retaining an extra copy of the comments being filed.)

Comments mailed to the addresses indicated as appropriate for hand or courier delivery may be delayed and could be considered late.

All comments received before the close of the comment period are available for viewing by the public, including any personally identifiable or confidential business information that is included in a comment. After the close of the comment period, CMS posts all electronic comments received before the close of the comment period on its public website.

*Submission of comments on paperwork requirements.* You may submit comments on this document's paperwork requirements by mailing your comments to the addresses provided at the end of the "Collection of Information Requirements" section in this document.

For information on viewing public comments, see the beginning of the **SUPPLEMENTARY INFORMATION** section.

**FOR FURTHER INFORMATION CONTACT:**
Eligibility, Election, and Enrollment—Lynn Orlosky, (410) 786–9064 or Randy Brauer, (410) 786–1618.
Benefits and Beneficiary Protections—Frank Szeflinski, (303) 844–7119.
Quality Improvement Program—Tony Hausner, (410) 786–1093.
Submission of Bids, Premiums, and Plan Approval—Ann Hornsby, (410) 786–1181.
Payments to MA Organizations—Anne Hornsby, (410) 786–1181.
Special Rules for MA Regional Plans—Marty Abeln, (410) 786–1032.
Contracts with MA Organizations—Frank Szeflinski, (303) 844–7119.
Beneficiary Appeals—Chris Gayhead, (410) 786–6429.

General Information—(410) 786–1296.

**SUPPLEMENTARY INFORMATION:**

*Executive Summary:* Beginning in 2006, the Medicare Advantage program would:

• Provide for regional plans that would make private plan options available to many more beneficiaries, especially those in rural areas.

• Expand the number of kinds of plans provided for, so that beneficiaries can choose from Health Maintenance Organizations, Preferred Provider Organization plans (the most popular type of employer-sponsored plan), Fee-for-Service plans, and Medical Savings Account plans, if available where the beneficiary lives.

• Enrich the range of benefit choices available to enrollees, including not only improved prescription drug benefits, but also other benefits not covered by traditional Medicare, and the opportunity to share in savings where plans can deliver benefits at lower costs.

• Provide incentives to plans, and add specialized plans, to coordinate and manage care in ways that comprehensively serve those with complex and disabling diseases and conditions.

• Use Open Season competition among plans to provide continuing pressure on plans to improve service, improve benefits, invest in preventive care, and hold costs down in ways that attract enrollees. These improvements would be fostered through enhanced and more stable payments to organizations, improvements in program design, introduction of new flexibility for plans, and reductions in impediments to plan participation. At the same time, the traditional Medicare program will be enhanced by addition of a prescription drug benefit, and beneficiaries will retain the ability to remain in or return to this enhanced Medicare if they prefer it to a private health plan.

• Advance the goal of improving quality and increasing efficiency in the overall health care system. Medicare is the largest payer of health care in the world. As such, Medicare can drive changes in the entire health care system. For example, as providers and health plans implement innovations, such as e-prescribing, that can result in improved quality of care for Medicare beneficiaries, these improvements would be passed on to other public health programs and commercial health care markets. Similarly, competing Medicare health plans will seek efficient ways to provide health care to their beneficiaries, such as through prevention and disease management

Exhibit 1 at 1

three other types of facilities are now included: rehabilitation hospitals, distinct part rehabilitation units, and long-term care hospitals. These changes are reflected in proposed § 422.318, which otherwise retains existing language from subpart F applicable only to subsection (d) hospitals.

10. Special Rules for Hospice Care (§ 422.320)

Proposed § 422.320 revises the existing MA special rules for hospice care to reflect the new bidding and payment methodology in sections 1853 and 1854 of the Act, and the creation of a prescription drug benefit under Part D. Previously, no payment was made to an MA organization on behalf of a Medicare enrollee who had elected hospice care under § 418.24 except for the portion of the payment applicable to the additional benefits. Now the MA organization will be paid the portion of the payment attributable to the beneficiary rebate for the MA plan plus the amount of the subsidies related to basic prescription drug coverage for plans that offer prescription drug coverage.

Note that for PACE organizations, PACE enrollees must elect either their PACE plan or the hospice benefit as their provider of Medicare services. An enrollee who elects to enroll in hospice is thereby disenrolled from the PACE benefit. However, PACE plans do provide a service similar to hospice known as "end-of-life-care."

11. Source of Payment and Effect of MA Plan Election on Payment (§ 422.322)

With the exception of a new provision addressing payments for Part D benefits, proposed § 422.322 is identical to § 422.268 in subpart F of the current MA regulations at § 422.268. Section 422.322(a)(2) has been added to reflect the creation of subsidized prescription drug coverage under Part D. As required by section 1853(f) of the Act, subsidy payments to MA–PD organizations for basic drug coverage under this title are included in the payments described in § 422.322(a)(2) (which are made from the Medicare Prescription Drug Account in the Federal Supplementary Medical Insurance Trust Fund).

12. Payments to MA Organizations for Graduate Medical Education Costs (§ 422.324)

These provisions are identical to the current MA provisions in subpart F at § 422.270, and require us to make payments to MA organizations for Direct Graduate Medical Education costs that MA organizations incur in dealings with non-hospital provider settings, under specified conditions.

*Subpart I—Organization Compliance With State Law and Preemption by Federal Law*

(If you choose to comment on issues in this section, please include the caption "Subpart I—Organization Compliance with State Law and Preemption by Federal Law" at the beginning of your comments.)

The MMA amended section 1856(b)(3) of the Act relating to Federal preemption of State law. Before this amendment, section 1856(b)(3) of the Act provided for two types of preemption, general and specific. Section 1856(b)(3)(A) of the Act provided that State laws that were inconsistent with M+C rules were preempted. Section 1856(b)(3)(B) of the Act provided that, even if a State law did not conflict with an M+C standard, it was preempted if it addressed one of four specified areas (benefit requirements, including cost-sharing rules; requirements relating to the inclusion or treatment of providers; requirements concerning coverage determinations and related appeals and grievance processes; and requirements relating to marketing materials and summaries and schedules of benefits concerning M+C plans).

Thus, the presumption was that a State law was *not* preempted if it did not conflict with an M+C requirement, and did not fall into one of the four specified categories. MMA reversed this presumption, providing that State laws are presumed to be preempted unless they fall into two specified categories. Specifically, section 1856(b)(3) of the Act now states that "the standards established under this section shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency)." The reason for such broad preemption authority is that the Congress intended that the MA program, as a Federal program, operate under Federal rules. There has been some confusion in recent court cases with respect to the preemption of State laws. Therefore, this broad preemption would apply prospectively, that is, it would not affect previous and ongoing litigation related to preemption of State laws. Furthermore, we believe the Congress broadened this authority to facilitate the operation of regional PPOs, which may have service areas that cross State lines.

We note that the Conference Report makes it clear that the Congress intended to broaden the scope of preemption through this change. Thus, we believe that the exception for State laws that relate to "State licensing" must be limited to State requirements for becoming State licensed, and would not extend to any requirement that the State might impose on licensed health plans that—absent Federal preemption—must be met as a condition for keeping a State license.

If a State requirement could be considered to relate to State licensing simply because the State could revoke a health plan's license for a failure to meet the requirement, this would mean that States could impose virtually any requirement they wished to impose without the requirement being preempted. This would extend even to State laws that were specifically preempted under the pre-MMA version of section 1856(b)(3) of the Act, such as benefit requirements, rules regarding the inclusion and treatment of providers, and rules regarding coverage decisions and related grievances and appeals. Because we believe that it is clear that the Congress intended to broaden the scope of Federal preemption, not to narrow it, we also believe that the exception for laws relating to State licensing must be limited to requirements for becoming State licensed (such as filing articles of incorporation with the appropriate State agency, or satisfying State governance requirements), and not extended to rules that apply to State licensed health plans.

Upon review of this regulation, we do not believe that the language in existing paragraph (c) of § 422.402 is necessary. Section 422.402(c) currently states that nothing in this section may be construed to affect or modify "any other law or regulation that imposes or preempts a specific State authority." We do not believe that this paragraph has any real effect, since the real issue would be whether the preemption in section 1856(b)(3) of the Act is controlling on the matter. This analysis would be unaffected by language in a regulation implementing section 1856(b)(3) of the Act. We therefore are proposing to remove the current § 422.402(c).

We therefore propose to revise § 422.402 to clearly state that the MA standards supersede State law and regulation with the exception of licensing laws and laws relating to plan solvency. Accordingly, with the exceptions of State licensing laws or State laws related to plan solvency, State laws do not apply to MA plans offered by MA organizations.

MMA also amended section 1854(g) of the Act, which prohibits States from imposing taxes on premiums paid to MA Organizations by us. Section 232 of

Exhibit 1 at 2