## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Centers for Medicare & Medicaid Services

### 42 CFR Parts 417 and 422

**CMS–4069–F**

**RIN 0938–AN06**

### Medicare Program; Establishment of the Medicare Advantage Program

**AGENCY:** Centers for Medicare & Medicaid Services (CMS), HHS.

**ACTION:** Final rule.

**SUMMARY:** This final rule implements provisions of the Social Security Act (the Act) establishing and regulating the Medicare Advantage (MA) program. The MA program was enacted in Title II of The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA) (Pub. L. 108–173) on December 8, 2003. The MA program replaces the Medicare+Choice (M+C) program established under Part C of title XVIII of the Act, while retaining most key features of the M+C program.

The MA program attempts to broadly reform and expand the availability of private health plan options to Medicare beneficiaries.

This final rule responds to public comments on a proposed rule published on August 3, 2004 (FR 69 46866).

**EFFECTIVE DATE:** These regulations are effective March 22, 2005 except for the following changes which will become effective on January 1, 2006: amendment of § 417.600(b); removal of § 417.602 through § 417.638; and amendments to § 417.832(d); and § 417.840.

**FOR FURTHER INFORMATION CONTACT:**
Eligibility, Election, and Enrollment—Lynn Orlosky, 410–786–9064 or Randy Brauer, (410) 786–1618.
  Benefits and Beneficiary Protections—Frank Szeflinski, 303–844–7119.
  Quality Improvement Program—Tony Hausner, 410–786–1093.
  Submission of Bids, Premiums, and Plan Approval—Anne Hornsby, 410–786–1181.
  Payments to MA Organizations—Anne Hornsby, 410–786–1181.
  Special Rules for MA Regional Plans—Marty Abeln, 410–786–1032.
  Contracts with MA Organizations—Mark Smith, 410–786 8015.
  Beneficiary Appeals—Chris Gayhead, 410–786–6429.
  General Information—410–786–1296.

**SUPPLEMENTARY INFORMATION:** *Copies*: To order copies of the **Federal Register** containing this document, send your request to: New Orders, Superintendent of Documents, P.O. Box 371954, Pittsburgh, PA 15250–7954. Specify the date of the issue requested and enclose a check or money order payable to the Superintendent of Documents, or enclose your Visa or Master Card number and expiration date. Credit card orders can also be placed by calling the order desk at (202) 512–1800 (or toll-free at 1–888–293–6498) or by faxing to (202) 512–2250. The cost for each copy is $10. As an alternative, you can view and photocopy the **Federal Register** document at most libraries designated as Federal Depository Libraries and at many other public and academic libraries throughout the country that receive the **Federal Register**.

This **Federal Register** document is also available from the **Federal Register** online database through *GPO Access*, a service of the U.S. Government Printing Office. The web site address is: *http://www.access.gpo.gov/fr/index.html*.

### Table of Contents

I. Background
  A. Medicare Prescription Drug, Improvement, and Modernization Act of 2003
  B. Relevant Legislation
  1. Balanced Budget Act of 1997
  2. Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999 and the Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of 2000
  3. Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA)
  C. Codification of Regulations
  D. Organizational Overview of Part 422

II. Analysis of and Responses to Public Comments
  A. Overview
  1. Comments on the August 3, 2004 Proposed Rule
  2. Organization of the Final Rule
  B. General Comments
  1. Administrative Procedure Act (APA) Issues
  2. Other General Comments

III. Provisions of the Proposed Rule, Analysis of and Responses to Comments on the Proposed Rule, and Final Decisions

IV. Provisions of the Final Rule

V. Collection of Information Requirements

VI. Regulatory Impact Analysis

Regulations Text

### Acronyms

Because of the many terms to which we refer by acronym in this final rule, we are listing the acronyms used and their corresponding terms in alphabetical order below:

| | |
|---|---|
| ABN | Advance beneficiary notice |
| ACR | Adjusted Community Rate |
| ACRP | Adjusted Community Rate Proposal |
| ADL | Activities of Daily Living |
| AHRQ | Agency for Healthcare Research and Quality |
| AI/AN | American Indian and Alaska Native |
| ALJ | Administrative law judge |
| APA | Administrative Procedure Act |
| BBA | Balanced Budget Act of 1997 |
| BBRA | Medicare, Medicaid and SCHIP [State Children's Health Insurance Program] Balanced Budget Refinement Act of 1999, (Pub. L. 106–113) |
| BIPA | Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of 2000 (Pub L. 105–33) |
| CAH | Critical Access Hospitals |
| CCPs | Coordinated Care Plans |
| CMPs | Competitive Medical Plans |
| CORF | Comprehensive outpatient rehabilitation facility |
| DSH | Disproportionate Share Hospital |
| EGPH | Employer and Union Group Health Plans |
| EOC | Evidence of coverage |
| ESRD | End-Sage Renal Disease |
| FEHB | Federal Employees Health Benefits |
| FFS | Fee-for-Service plans |
| FI | Fiscal Intermediaries |
| HCPP | Health care prepayment plan |
| HHA | Home health agency |
| HMO | Health Maintenance Organizations |
| HOS | Health Outcomes Survey |
| ICF/MR | Intermediate Care Facilities for Mentally Retarded |
| IHS | Indian Health Service |
| IPA | Independent Physician Association |
| ISAR | Intra-Service Area Rate |
| I/T/U | Indian Health Service, Tribal and Urban Health Program |
| LEP | Limited English Proficiency |
| LMRP | Local Medical Review Policy |
| M+C | Medicare+Choice |
| MA | Medicare Advantage |
| MA-PD | Medicare Advantage Prescription Drug |
| MAC | Medicare Appeals Council |
| MCOs | Managed Care Organizations |
| MMA | Medicare Prescription Drug, Improvement, and Modernization Act of 2003 |
| MSA | Medical Savings Account |
| MYBE | Mid-year Benefit Enhancement |
| OACT | Office of the Actuary |
| OPM | Office of Personnel Management |
| PACE | Program All-Inclusive Care for the Elderly |
| P4P | Pay for Performance |
| PCP | Primary Care Physician |
| PDP | Prescription Drug Plan |
| PFFS | Private Fee-For-Service |
| POS | Point of Service |
| PPOs | Preferred Provider Organizations |
| PSOs | Provider Sponsored Organizations |
| QI | Quality Improvement |
| QIO | Quality Improvement Organization |
| RFB | Religious Fraternal Benefit |
| SAE | Service Area Expansion |
| SEP | Special Election Period |
| SHIP | State Health Insurance Programs |

Exhibit 2 at 1

requirement that the State might impose on licensed health plans that absent Federal preemption must be met as a condition for keeping a State license.

In addition to outlining the new scope of the preemption, we also proposed the following technical changes:

- We proposed to remove the current § 422.402(c) because we believed it was no longer relevant given the new MMA provision.
- We clarified that States are expressly prohibited from imposing a premium tax, or similar type of tax, on premiums paid by beneficiaries or third parties on behalf of beneficiaries to MA organizations.

Below we summarize and respond to the comments we received on Subpart I:

*Comment:* A commenter expresses concern that the statutory and regulatory language stating that Federal preemption does not extend to State licensing or solvency requirements is vague and may allow States to impose network access requirement on MA plans.

*Response:* We note that the Conference Report makes it clear that the Congress intended to broaden the scope of Federal preemption with the intention of ensuring that the MA program as a Federal program will operate under Federal rules. We have also clarified (in the preamble to the interim regulation) and we restate here that we believe that State licensing laws under Federal preemption are limited to State requirements for becoming State licensed, and cannot be extended to other requirement that the State might impose on licensed health plans that absent Federal preemption must be met as a condition for keeping a State license. We believe that under current Federal preemption authority States are limited in applying only those requirements that are directly related to becoming State licensed. For example, State-licensing requirements may include requirements such as filing articles of incorporation with the appropriate State agency, or satisfying State governance requirements. However, under Federal preemption, State licensing laws may not be extended to include rules that apply to State licensed health plans which we believe would include network adequacy requirements for MA plans.

*Comment:* A commenter expresses concern that if all State regulation of MA plans is broadly preempted by Federal law (with the limited exception of licensing and solvency requirements), contracting providers will not have adequate means to ensure prompt payment or access to external review of inappropriate denials of coverage or payment. The commenter recommended that CMS either narrow its interpretation of how State law may be preempted or expand its own Federal requirements for plan-provider contracting standards to include basic provider protections, such as prompt payment.

*Response:* As previously stated, we believe that with the exceptions of State licensing and solvency requirements the Congress clearly intends and the MMA statute provides that the MA program is to be solely under Federal and not State rules. However, we do recognize concerns regarding the effectiveness of Federal regulation of the MA program. In overseeing the MA Program, CMS will ensure appropriate oversight of MA plans.

With respect to prompt pay requirements, providers and MA organizations may enter into contracts the terms of which are established by the parties. In general the terms of these contracts including payment amounts and prompt payment standards are determined by negotiation between the parties. We specifically require in our regulations at § 422.520(b) that contracts between MA organizations and providers contain prompt payment standards which the parties have both agreed to. In the event an MA organization fails to honor its provider contract(s) in certain circumstances, we may impose intermediate sanctions or even terminate its contract with the MA organization.

*Comment:* A commenter asks that CMS clarify in its regulations that, with the exception of State laws that relate to State licensing and solvency, Federal preemption extends to any requirement that the State might impose, including requirements imposed as a condition of maintaining State licensure.

*Response:* We believe our regulations at § 422.402 are clear in regards to the broad extent of Federal preemption authority under the MMA. We have discussed in previous responses that States may not use licensure or solvency requirements as an indirect means to impose health plan regulations on MA plans. Again, we reiterate our understanding of the congressional intent that the MA program, as a Federal program operate solely under Federal rules with the exception of State licensure and solvency requirements.

*Comment:* A commenter acknowledges the preamble discussion in the proposed rule clarifying that State licensing laws are limited to the requirements for becoming State licensed (for example, filing of articles of incorporation with the appropriate State agency or satisfying State governance requirements) and do not extend to the requirements that a State may impose on licensed health plans that absent preemption must be met as a condition of keeping a State license. The commenter recommended that CMS make this clarification in § 422.402 of the MA regulations.

*Response:* We believe State licensure requirements cannot be used as an indirect way to regulate MA plans by imposing requirements not generally associated with licensure. For example, we stated that reasonable licensure requirements may include the filing of articles of incorporation with the appropriate State agency or satisfying State governance requirements. However, we chose not to establish the parameters of State licensure in our regulations as there may be other legitimate aspects of State licensure we have not noted.

*Comment:* A commenter stated that the proposed rule reiterates the MMA and fails to clarify the extent to which State law is preempted. The commenter maintains that the proposed regulation gives no guidance to States in determining which laws they can require Medicare plans to observe. According to the commenter, States do not know which standards they can enforce to protect consumers. As an example, the commenter cites the Knox-Keene Act in California which conditions health plan licensure on several minimum requirements. The commenter maintains that without explanation from CMS on what types of ''licensing'' laws States may enforce, California has no way of determining which parts of the State's broad statutory scheme may apply to Medicare plans and which parts are preempted. The commenter believes that CMS has not provided guidance to States on how financial solvency requirements can be separated from other parts of State licensing law which are intricately interwoven. Instead of clarifying underlying statute and policy, in the commenter's view, the proposed rule injects further confusion regarding the extent of Federal preemption of State law. The commenter requests further explanation and practical guidance on the role of the States in enforcing minimum licensure and financial solvency requirements.

*Response:* As we stated in the preamble to the proposed rule (69 FR 46904), we believe that under the MMA, States are preempted from applying any regulatory requirements on MA plans with the sole exception of State licensure and solvency requirements. We also believe that licensure and solvency requirements cannot be used

Exhibit 2 at 2